IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONARD HAWK, | ) | |
| Petitioner, | ) | C.A. No. 06-300 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge McLaughlin |
| JAMES SHERMAN, Warden, | ) | Chief Magistrate Judge Baxter |
| FCI McKean, | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner Leonard Hawk be denied, and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner is a federal inmate formerly incarcerated at the Federal Correctional Institution at McKean ("FCI McKean"), located in Bradford, Pennsylvania.[1] He is serving an aggregated sentence of 131 months, which includes: (1) a 123-month sentence for federal robbery and firearms crimes that was imposed on June 1, 1998, in the United States District Court for the Northern District of Texas; and, (2) a subsequent 8-month sentence for possessing contraband in prison that was imposed on March 13, 2006, in the United States District Court for the Western District of Pennsylvania. He has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which he contends that the Federal Bureau of Prisons (the "BOP") erred in computing his sentence.

---

[1] When Petitioner filed his petition for writ of habeas corpus, he was incarcerated at FCI McKean. He is currently incarcerated at the United States Penitentiary at Hazelton, located in Bruceton Mills, West Virginia.

1

## A. Relevant Factual and Procedural History

On January 20, 1995, Petitioner pleaded guilty to a State of Texas criminal charge of Burglary of a Building. (Ex.[2] 2 at ¶ 5d). The state court sentenced him to three years deferred adjudication of probation. Later, his state probation was revoked and he was sentenced to three years imprisonment. On February 7, 1997, the state released him from incarceration to a halfway house on mandatory supervision.[3] He was scheduled to complete his term of mandatory supervision on June 15, 1998. (Id.)

On November 19, 1997, Petitioner was apprehended by agents of the FBI and the Fort Worth, Texas, Violent Crimes Fugitives Joint Task Force. (Id. at ¶ 5c, ¶ 5e, ¶ 6a). On that date, the State of Texas arrested him, charged him with Aggravated Robbery, and detained him in the Tarrant County (Texas) Jail. (Id. at ¶ 5e, ¶ 6a). On November 25, 1997, the Texas Department of Criminal Justice, Parole Division, issued a mandatory supervision violator's warrant against Petitioner. (Id. at ¶ 5a, ¶ 5d, ¶ 6b). That warrant, numbered 728254, was executed on December 2, 1997, when Petitioner was in the Tarrant County Jail. (Id. at ¶ 6c; Ex. 2b).

On December 10, 1997, a federal indictment was filed in the United States District Court for the Northern District of Texas, charging Petitioner with Bank Robbery and Unlawful Use of a Firearm During and In Relation to the Commission of a Crime of Violence, in violation of 18 U.S.C. §§ 2113 and 924(c), respectively. (Id. at ¶ 5b, ¶ 6d). On January 20, 1998, the state transferred temporary physical custody of Petitioner to the United States Marshals Service ("USMS") pursuant to a federal writ of habeas corpus *ad prosequendum*[4] and the federal authorities

---

[2] All exhibit citations are to those documents appended to the Response at Doc. # 11.

[3] In some documents submitted by Respondent, Petitioner's state "mandatory supervision" term is referred to as a "parole term."

[4] "A prisoner detained pursuant to a writ *ad prosequendum* is considered to remain in the primary custody of the first

(continued...)

2

arrested him.  (Id. at ¶ 5b, ¶ 6e; Ex. 2c at p. 1); see also United States v. Hawk, Criminal Docket No. 4:97-CR-157 (N.D. Tex.)

On February 13, 1998, while on federal writ, the State of Texas dismissed the criminal charge of Aggravated Robbery that was pending against Petitioner and which was the subject of the November 19, 1997 arrest.  (Id. at ¶ 5e, ¶ 6f).  The state charge on the mandatory supervision violation was still pending against him, however.  (Id. at ¶ 6c, ¶ 8; Ex. 2b).  He remained in the physical custody of the USMS pursuant to the federal writ of habeas corpus *ad prosequendum*.  (Id. at ¶ 5b, ¶ 6e-I).  On March 16, 1998, he pleaded guilty in the District Court for the Northern District of Texas to the two federal criminal charges.  (Id. at ¶ 6g).  On June 1, 1998, the Honorable Terry R. Means sentenced him to a total term of incarceration of 123 months, to be followed by a 3-year term of supervised release.  (Id. at ¶ 6h).  Judge Means did not specify how the federal sentence should be served in relation to any other sentence.  (Id. at ¶ 7; Ex. 2d).

On June 5, 1998, the USMS returned Petitioner to the Tarrant County Jail in satisfaction of the federal writ of habeas corpus *ad prosequendum*.  (Id. at ¶ 6i; Ex. 2c at p.1).  That same day, the USMS lodged a federal detainer against him with the Tarrant County Sheriff's Department.  (Id. at ¶ 6j; Ex. 2a).

On June 17, 1998, the State of Texas revoked Petitioner's mandatory supervision term.  (Id. at ¶ 6k; Ex. 2e).  On July 21, 1998, the state released him to the USMS.  (Id. at ¶ 6l; Ex. 2c at p. 1).  On August 24, 1998, the BOP designated him to the United States Penitentiary ("USP") in Allenwood, Pennsylvania.  (Id. at ¶ 6n).

**The BOP's September 1998 Sentence Computation**

In order to calculate Petitioner's federal sentence, the BOP contacted Texas state and local officials for information.  In an August 24, 1998 letter from the Sheriff's Office of Tarrant County,

---

[4](...continued)
jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person.  The receiving sovereign-in this case, the federal government is, therefore, considered simply to be 'borrowing' the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him."  Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002) (citations omitted)

3

Texas, to USP Allenwood, it was explained:

> In checking our records you are correct in that the Aggravated Robbery Charge was dismissed, and that [Petitioner] was in custody on that charge from 11-19-97 until 01-20-98. On 06-05-98 he was returned [by the USMS] to the Tarrant County Jail on Warrant Number 728254 issued by the Texas Board of Pardon and Paroles. According to them his parole was revoked on 06-17-98. He was then released to the [USMS] on 07-23-98 [sic].[5]
>
> As the warrant was issued by the State of Texas it is not known what his original obligation was to the State on what cause. The information may be obtained from [the Texas Department of Criminal Justice, Board of Pardon and Paroles or the Institutional Division, Texas Department of Criminal Justice, Records and Classification].

(Ex. 2f).

In September 1998, the BOP computed Petitioner's federal sentence. 18 U.S.C. § 3585(a) governs the date a federal sentence commences, and it provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant *is received in custody awaiting transportation to,* or arrives voluntarily to commence service of sentence at, *the official detention facility at which the sentence is to be served.*

(Emphasis added). A federal sentence cannot commence earlier than the date on which it was imposed. BOP Program Statement 5880.28, Sentence Computation Manual, Chapt. I.3, Page 13; United States v. LaBeille-Soto, 163 F.3d 93, 98 (2nd Cir. 1998); Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983).

BOP policy regarding the application of 18 U.S.C. § 3585(a) is set forth in Program Statement 5880.28, Sentence Computation Manual, Chapter I.3 at Pages 12-13. It instructs:

> If the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

(Emphasis in original). This policy is an application of the common law doctrine regarding priority of custody that was adopted to provide an orderly method by which to prosecute an individual that

---

[5] Petitioner was released to USMS custody on July 21, 1998.

violated the law of more than one sovereign. The doctrine was first recognized by the United States Supreme Court in Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Chambers v. Holland, 920 F.Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996). It was developed to promote comity, mutual assistance, and orderly procedure. Ponzi, 258 U.S. at 260-64; Bowman, 672 F.2d at 1153-54.

In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary control, or custody, over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him, and it is entitled to have him serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. See, e.g., Bowman, 672 F.2d at 1153. Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence." Chambers, 920 F.Supp. at 622 (citations omitted). The determination of priority of custody between a state and the federal government is to be resolved by the executive branches of the two sovereigns. United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980) (citing Ponzi, 258 U.S. at 261-62).

The BOP has incorporated the common law doctrine into its policies. See BOP Program Statement 5880.28, Sentence Computation Manual, Chapt. I.3 at Pages 12-13, 31-33. See also Program Statement 5160.05, Designation of State Institution of Federal Sentence, Pages 1-12.[6] In relevant part, its policies provide that when a federal district court sentences a prisoner who at the time is in the primary custody of a state, the prisoner generally will be returned to the state after federal sentencing and the BOP will commence the prisoner's federal sentence when the state relinquishes its custody and releases the prisoner to federal custody.[7] See also 18 U.S.C. § 3585(a).

---

[6] BOP Program Statements are available for review on its website at www.bop.gov.

[7] Different policies apply when an individual is serving *concurrent* federal and state sentences. Those polices are set forth in Program Statement 5880.28, Sentence Computation Manual, Chapt. I.3 at Pages 31-33 and Program Statement

5

On the other hand, when a prisoner is in the primary custody of the federal government on the date his federal sentence is imposed, the BOP will deem the sentence to have commenced on that date ("even if a state sentence is running along concurrently"). BOP Program Statement 5880.28, Sentence Computation Manual, Chapt. I.3 at Page 12.

In the Response to the instant habeas petition, the BOP explains that, when it initially computed Petitioner's sentence, it inaccurately surmised that the State of Texas had relinquished primary custody over Petitioner when the state Aggravated Robbery charge was dismissed in February 1998. Based upon this understanding, it determined that Petitioner was in primary federal custody on the date his sentence was imposed (June 1, 1998). (Doc. # 11 at 4; see also Ex. 2 at ¶ 6p; Ex. 2g). Therefore, it deemed his federal sentence to have commenced on that date.

In fact, the BOP had misinterpreted the relevant circumstances. Although the state had dismissed the Aggravated Robbery charge on February 13, 1998, the state maintained primary custody over Petitioner due to the existence of the state mandatory supervision warrant, which had been executed on December 2, 1997. Because the state had executed that warrant prior to Petitioner's federal arrest on January 20, 1998, Petitioner actually was in the primary custody of the State of Texas on the date his federal sentence was imposed. As set forth below, when the BOP eventually discovered its error, it re-computed the commencement date of Petitioner's federal sentence.

As part of its September 1998 sentence computation, the BOP also determined whether Petitioner was entitled to any credit against his federal sentence for time he served in jail prior to the commencement of his federal sentence. "Prior custody" credit is governed by 18 U.S.C. § 3585(b), which provides:

> *A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –*
>
> (1)      as a result of the offense for which the sentence was imposed; or
>
> (2)      as a result of any other charge for which the defendant was arrested

---

[7](...continued)
5160.05, Designation of State Institution for Service of Federal Sentence, Pages 1-12.

> after the commission of the offense for which the sentence was
> imposed;
>
> *That has not been credited against another sentence.*

(Emphasis added).

According to the BOP, the information it had available to it in September 1998 indicated that none of the time Petitioner served in official detention from November 19, 1997 (the date of his arrest on the state Aggravated Robbery charge) until June 1, 1998 (the date the BOP deemed his federal sentence to have commenced) was credited against any Texas sentence. (Ex. 2 at ¶ 6p). As a result, it determined that Petitioner was entitled to prior custody credit for all time served in official detention from November 19, 1997 until June 1, 1998.

### The BOP's May 2006 Sentence Re-Computation

In 2005, Petitioner committed crimes while he was serving his federal sentence at FCI McKean. On March 13, 2006, the Honorable Maurice B. Cohill of this Court sentenced him to an 8-month term of imprisonment for Possession of Contraband in Prison, in violation of 18 U.S.C. §§ 1791(a)(2) and 1791(b)(3), to run consecutive to the federal sentence he was already serving. (Id. at ¶ 6q). Pursuant to 18 U.S.C. § 3584(c), the consecutive 8-month sentence was aggregated with the previously imposed 123-month term, resulting in a total term of imprisonment of 131 months. (Id. at ¶ 6t).

The BOP audited and re-computed Petitioner's federal sentence in May 2006. During this process, the BOP explains, it obtained information from the State of Texas that it claims it did not have when it made Petitioner's initial sentence computation in September 1998. Specifically, in April 2006, the Texas Department of Criminal Justice advised the BOP that Petitioner had returned to its custody on December 2, 1997, in violation of his mandatory supervision term. (Ex. 2b). It further advised the BOP that Petitioner received jail credit from December 2, 1997, through August 5, 1998, against his state mandatory supervision violator's sentence. (Id.)

Based upon the new information received from the Texas Department of Criminal Justice, the BOP realized that Petitioner actually had been in primary state custody on the date his federal

sentence was imposed and that it had erred in its September 1998 computation. Because Petitioner actually was in primary state custody on the date his federal sentence was imposed, his sentence did not commence on that date (June 1, 1998). Rather, it commenced approximately 50 days later – on July 21, 1998, the date state authorities released Petitioner to the USMS to begin serving his federal sentence. (Id.; Ex. 2 at ¶ 6t, ¶ 8).

During the May 2006 sentence re-computation, the BOP also concluded that Petitioner was not entitled to all of the prior custody credit that it had previously provided to him under 18 U.S.C. § 3585(b). (Ex. 2 at ¶ 6r; Ex. 2i). Because the new information provided by the Texas Department of Criminal Justice established that the state had credited Petitioner for all time served from December 2, 1997, until the date his federal sentence commenced (July 21, 1998) to his mandatory supervision violator's term, the BOP was statutorily precluded under 18 U.S.C. § 3585(b) from crediting Petitioner for time served in official detention between those dates. (Ex. 1; Ex. 1a; Ex. 2). The BOP calculated that he should only receive 13 days of prior custody credit for time served in official detention from November 19, 1997 through December 1, 1997, because that time had not been credited against his state sentence. (Ex. 2 at ¶ 6t).

According to information publicly available on the BOP's website, Petitioner's release date is currently projected to be November 17, 2008.

In his petition for writ of habeas corpus, Petitioner contends that the BOP erred in its May 2006 sentence re-computation. For relief, he requests that we direct the BOP to return to him the credit against his federal sentence for time served in official detention between December 2, 1997 through July 20, 1998, which he had received under his September 1998 computation.

**B.    Subject Matter Jurisdiction**

A challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255 and filed with the federal district court that convicted and sentenced the petitioner. In cases such as this, where the petitioner is challenging the BOP's *execution* of his federal sentence, the habeas petition is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976).

8

**C.     Exhaustion**

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his or her claim to federal court. <u>Wilson</u>, 503 U.S. at 334-35; <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757 (3d Cir. 1996). The BOP codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement. Respondent concedes that Petitioner has exhausted his available administrative remedies with the BOP on the issue that is the subject of this Petition. (Doc. # 11 at pp. 7-9).

**D.     Discussion**

Computation of a federal sentence is the responsibility of the Attorney General of the United States, who exercises it through the BOP. <u>See</u>, <u>e.g.</u>, <u>United States v. Wilson</u>, 503 U.S. 329, 331 (1992); 28 C.F.R. § 0.96. The BOP, therefore, is the agency responsible for implementing the statutes governing the computation of federal sentences. Its policies regarding sentence computation are set forth in Program Statement 5880.28, <u>Sentence Computation Manual</u>. Also relevant to this case is Program Statement 5160.05, <u>Designation of State Institution for Service of Federal Sentence</u>.

Petitioner does not dispute that the BOP has the authority to correct its errors. (Doc. # 12 at ¶ 14). Rather, he asserts that the BOP's September 1998 sentence computation was correct and its May 2006 sentence re-computation was incorrect. For the reasons set forth below, his argument is without merit.

**1     Petitioner's Federal Sentence Commenced on July 21, 1998**

Respondent has demonstrated that the BOP properly calculated Petitioner's federal sentence commencement date in accord with the relevant statutes and its policies when it re-computed his sentence in May 2006. The state mandatory supervision violator's warrant was executed on December 2, 1997, before Petitioner's federal arrest. Therefore, the state had primary custody of him. The USMS obtained temporary custody of him pursuant to a writ of habeas corpus *ad*

*prosequendum* on January 20, 1998 and federal authorities arrested him on that date. He was still "on loan" to the USMS on June 1, 1998, the date Judge Means imposed his federal sentence. BOP policy that directs that a prisoner's federal sentence commences upon imposition if he "is in <u>exclusive</u> federal custody (not under the jurisdiction of a federal writ of habeas corpus *ad prosequendum*)," does not apply to Petitioner. Program Statement 5880.28, <u>Sentence Computation Manual</u>, Chapter I.3 at Pages 12. On July 21, 1998, he was "received in custody awaiting transportation to" a federal facility to serve his federal sentence, and the BOP properly commenced his federal sentence on that date pursuant to 18 U.S.C. § 3585(a) and applicable policy.

Petitioner insists that the state mandatory supervision violator's warrant was not executed on December 2, 1997. He asserts that it was executed on June 17, 1998. The record evidence refutes these contentions. Petitioner's state mandatory supervision was *revoked* on June 17, 1998 (Ex. 2e), but the warrant charging him with violating the conditions of his mandatory supervision was *executed* on December 2, 1997. This is evidenced by the Texas Department of Criminal Justice's express statement to the BOP that Petitioner was "in custody" pursuant to the mandatory supervision violator's warrant as of December 2, 1997. (Ex. 2d; Ex. 2 at ¶ 8).

Petitioner also contends that the state mandatory supervision warrant "evaporated" with the dismissal of the state Aggravated Robbery charge on February 13, 1998. (Doc. # 3 at pp. 14, 16). He is wrong. The state mandatory supervision violator's charge was not dismissed with the state Aggravated Robbery charge.

### 2. Petitioner Is Not Entitled To the Challenged Prior Custody Credit

In its May 2006 re-computation, the BOP also properly calculated the amount of prior custody credit to which Petitioner is entitled under 18 U.S.C. § 3585(b). The information contained in the Texas Department of Criminal Justice's April 2006 letter irrefutably demonstrates that all of the time Petitioner served in official detention between December 2, 1997, until the date his federal sentence commenced was credited against the mandatory supervision violator sentence imposed by the State of Texas. Under the express terms of 18 U.S.C. § 3585(b), the BOP may not grant prior custody credit for time served in official detention between those dates because that

time had been credited against another sentence. See also Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007) (the BOP did not err when it disallowed prior custody credit under 18 U.S.C. § 3585(b) because the time at issue had been credited against the petitioner's state parole violation); Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001).

### 3. Petitioner's Federal Sentence and State Mandatory Supervision Violator's Sentence Were Not Concurrent

Petitioner also appears to be contending that the BOP should have determined that his federal sentence and state mandatory supervision violator's sentence ran concurrently with one another. 18 U.S.C. § 3584(a) provides: "Multiple terms of imprisonment imposed at different times run consecutively *unless the court orders that the terms are to run concurrently*." (Emphasis added). Pursuant to this statute, the BOP will presume that federal and non-federal sentences are to be served consecutively unless the federal sentencing court expressly indicates that the sentences should run concurrently. See Program Statement 5880.28, Sentence Computation Manual, Chapt. I.3 at Pages 31-33; Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence, Pages 2-7.

Petitioner argues that his state mandatory supervision violator's sentence had not yet been imposed at the time Judge Means sentenced him on June 1, 1998, and therefore there was no reason for the court to indicate that his federal sentence should run concurrent to any other sentence. BOP policy provides for this circumstance. It instructs:

> *On occasion, a federal court will order the federal sentence to run concurrently with or consecutively to a not yet imposed term of imprisonment.* Case law supports a court's discretion to enter such an order and the federal sentence shall be enforced in the manner prescribed by the court. If the just imposed federal sentence is ordered to run concurrently with a non-existent term of imprisonment, then the [Regional Inmate Systems Administrator] shall designate the non-federal place as the place to serve the federal sentence as of the date that the federal sentence was imposed. *If the federal sentence is silent*, or ordered to run consecutively to the non-existent term of imprisonment, *then the federal sentence shall not be placed into operation until the U.S. Marshals' Service or the Bureau of Prisons gains exclusive custody of the prisoner*.

Program Statement 5880.28, Sentence Computation Manual, Chapt. I.3, Page 32A.

Here, Judge Means was silent as to how Petitioner's federal sentence should be served in

11

relation to any state sentence not yet imposed.  (Ex. 2d; Ex. 2 at ¶ 10).  Accordingly, pursuant to 18 U.S.C. § 3585(a), 18 U.S.C. § 3584(a), and applicable policy, the BOP properly commenced Petitioner's sentence when the state released him to USMS custody on July 21, 1998.

### 4. The "Continuous Service" Rule Does Not Entitle Petitioner To Relief

Finally, Petitioner contends that the BOP's execution of his sentence violates the common law "continuous service" rule and in support relies upon Weekes v. Fleming, 301 F.3d 1175 (10th Cir. 2002).  Petitioner's reliance on Weekes is misplaced.  In that case, the BOP had originally determined that Johnny Weekes was in primary federal custody on the date his federal sentence was imposed.  Weekes, 301 F.3d at 1177-80.  Federal authorities transported him to the BOP-designated federal prison, and the BOP commenced his sentence on February 21, 1995 pursuant to 18 U.S.C. § 3585(a).  Not long thereafter, the BOP reevaluated its decision, determined that Weekes was actually in primary state custody, and it transferred him from federal prison to a state correctional institution so that he could serve a state sentence.  Id. at 1177-78.  When Weekes completed his state sentence more than four years later, on April 18, 1999, the USMS obtained custody of him.  The BOP determined that his federal sentence commenced on that date pursuant to 18 U.S.C. § 3585(a).  It did not give him any credit – either under 18 U.S.C. § 3585(a) or (b) – for any time he served in official detention before April 18, 1999.  Id. at 1178.

In his subsequent Section 2241 habeas petition, Weekes contended that the BOP erred in calculating his sentence.  He argued, *inter alia*, that he was in primary federal custody when his federal sentence was imposed, and that BOP's original sentence computation was correct.  The BOP countered that Petitioner was in primary state custody on the date of his federal sentencing, and that its subsequent sentence computation was appropriate under 18 U.S.C. § 3585(a).  The Court of Appeals for the Tenth Circuit agreed with Weekes and therefore held that his federal sentence commenced on February 21, 1995.  Id. at 1179.  It then determined that the BOP had interrupted Weekes' federal sentence when it transferred him to a state correctional facility after his federal sentence had already commenced and that it erred when it disallowed him any credit for the time he served in the state correctional institution.  This, it held, was a violation of the "continuous

12

serve rule." Id. at 1179-82. That rule provides that "unless interrupted by fault of the prisoner … a prison sentence runs continuously from the date on which the defendant surrenders to begin servicing it." Id. at 1180 (citing Dunne v. Keohane, 14 F.3d 335, 336 (7th Cir. 1994)).

The instant case is distinguishable from Weekes. Unlike Weekes, Petitioner was in primary custody of the state – not the federal government – when his federal sentence was imposed. Therefore, in this case the BOP properly commenced Petitioner's federal sentence when the State of Texas relinquished primary custody over him. And, Petitioner has been serving his federal sentence continuously since July 21, 1998, the date he was "received in custody awaiting transportation to" a federal facility to serve his federal sentence. 18 U.S.C. § 3585(a). The BOP did not designate and transport him to a federal prison, commence his sentence, then stop it and physically transfer him to a state prison. Rather, when the BOP initially calculated his sentence in September 1998, it retrospectively determined that his sentence commenced on June 1, 1998. It later revised that determination to July 21, 1998 in accord with the applicable federal statutes and BOP policy.

Additionally, The Court of Appeals for the Third Circuit Court has observed that the common law continuous service rule "is only a rule of interpretation … laden with considerations of policy" and "not a constitutional command[.]" Boston v. United States, 210 Fed.Appx. 190, 193 n.2 (3d Cir. 2006) (quoting Dunne, 14 F.3d at 336). It has further explained that "courts have not followed [the continuous service] rule without exception.… [T]he danger that the rule protects against is that the government might abuse its coercive power to imprison a person and artificially extend the duration of the sentence by continuously releasing and then reincarcerating the prisoner." Id. at 193 (citing Free v. Miles, 333 F.3d 550, 554 (5th Cir. 2003); Dunne, 14 F.3d at 336; Cox v. United States, 551 F.2d 1096, 1099 (7th Cir. 1977)). Here, the BOP did not abuse its authority or artificially extend the duration of Petitioner's sentence, and the continuous service rule was not implicated by its conduct. Accord Allen v. Nash, 236 Fed.Appx. 779 (3d Cir. 2007).

### E. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as

amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Federal prisoner appeals from the denial of a Section 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

### III.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B), the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge


Dated: January 14, 2008

cc:     The Honorable Sean J. McLaughlin
        United States District Judge